FILED

2008 Apr-17  PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MARY E. WATSON,

      PLAINTIFF,

v.                                 CASE NO.: CV-07-J-573-S

WAL-MART STORES, INC., et al.,

      DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is the defendants' motion for summary judgment and evidence (doc. 26), and memorandum in support of said motion (doc. 27), to which the plaintiff filed a response and evidence (doc. 33) and the defendants thereafter filed a reply (doc. 36).[1]  Defendants have also requested oral argument.  The court being of the opinion that oral argument would not be of substantial assistance, said request is **DENIED**.

Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

---

[1] The motion was filed jointly on behalf of defendants Wal-Mart Stores, Inc. ("Walmart") and Alfred Davis ("Davis").  As recognized by the plaintiff in her response to the motion for summary judgment, John Belser was a named defendant but has never been served and more than 120 days have elapsed.  The court therefore shall dismiss him from this action by separate order.

# I.  Factual Background

Plaintiff sued her past employer for sexual harassment and retaliation, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*., and several state law claims.[2]

Plaintiff worked in the dairy department loading items in the freezer at Wal-Mart from July 5, 2005, until she was terminated on December 19, 2005.[3]  Plaintiff depo. I at 40, 58, 93-96, 98.[4]  The plaintiff complains that Kevin Scott, the store manager, unfairly fired her.  *Id*. at 123-124.  In the short time she was employed, the plaintiff made numerous written and verbal complaints to the manager and others regarding what she perceived to be sexual harassment and a hostile environment.  *See e.g.*, plaintiff's evidentiary submissions.

In July or August 2005 Alfred Davis was transferred to the dairy department.[5]  Plaintiff depo. I at 120-121.  The plaintiff complained that she was supposed to train Davis but Davis was insubordinate.  *Id*., at 119-120, 129-131, 199-200.   Scott

---

[2]In her response to the motion for summary judgment, the plaintiff states that she "elects not to pursue her Title VII claim for sexual harassment and hostile work environment." Plaintiff's response, at 13.  The court shall dismiss these claims by separate order.

[3]The plaintiff applied for and received unemployment compensation, but had to pay some back.  Plaintiff depo. at 58-59.  She then applied for and began receiving Social Security disability checks, having been found disabled as of December 15, 2005.  *Id*. at 59-60, 74-76.

[4]The plaintiff's deposition of January 15, 2008, is referenced by the court as "Plaintiff depo. I."  The continuation on January 22, 2008, is referenced as "Plaintiff depo. II."

[5]Mr. Davis is referred to both as Alfred and "Alford" in various documents before the court.  However, in his own deposition, he does state that his name is Alfred.  Davis depo. at 7.

2

investigated this complaint, and concluded that because plaintiff was not Davis' supervisor, he could not be insubordinate to her.  Scott depo. at 47; declaration of Scott, ¶ 16.

The plaintiff complains that on one occasion she heard Davis ask a customer for her phone number.  Plaintiff depo. I at 176.  Scott stated that flirting with customers and getting their phone numbers was not a violation of company policy. Scott depo. at 44.  Nothing in her written complaint to defendant mentions any comments Davis made of a sexual nature, nor did he make any.  Plaintiff depo. I at 190-192.  On one occasion, Davis commented that Belser "get the women."  *Id.* at 193.  In early September 2005, Davis was transferred to another department.  *Id.* at 122.

The plaintiff complains she was sexually harassed by John Belser.[6]  Plaintiff depo. I at 130.  She complained to management that he tried to talk to her, came into her department and called her to come to his department.  *Id.* at 156, 158, 274-275. On the occasion when he tried to get her to his department, the plaintiff could not say it was anything sexual, but knew it was not job related.  Plaintiff depo. II at 64.  He asked her to smile about five times.  Plaintiff depo. I at 159-160.  Scott investigated

---

[6]In Kevin Scott's deposition, this individual is referred to as John Belcher.  *See* Scott depo. at 33.

these incidents and found that an associate asking another associate to smile is not sexual harassment.  Scott depo. at 31.  He investigated plaintiff's complaint that Belser flirted with  her by coming into her work area and concluded that they worked in  the  general  area  of  each  other,  that  associates  interact  all  the  time,  and  that commenting about her smiling was not a violation of any policy.  *Id.* at 33-34.

The  plaintiff  complains  that  Davis  once  asked  her  if  she  was  Belser's girlfriend.[7]  Plaintiff depo. I at 164.  Scott was unaware of this incident.  Scott depo. at  34.   The  plaintiff   considered  these  events  to  constitute  unwanted  advances. Plaintiff depo. I at 296.  Sometime prior to August 28, 2005, the plaintiff also saw Belser look at girls' behinds on two occasions.  Plaintiff depo. II at 44-45.  Scott was aware that the plaintiff considered Davis' actions to be harassing female customers, but he received no customer complaints.  Scott depo. at 43-44.  After the plaintiff complained about Belser, he was told to stay away from her.  Plaintiff depo. II at 62.

The plaintiff complained that Belser, Davis and "some other boys was say that they were going to get that 'H'.[8]  I wrote a letter to them saying what they said.  After

---

[7]Davis disputed asking this.  He testified, "And definitely ask nobody about no who you go with.  What I want to ask Mary who she go with for?  I don't – I'm a teenager, cuz.  My mind on girls blowing a pop – blowing bubble gum bigger that your forehead."  Davis depo. at 89.

[8]Plaintiff explained that "H" meant "ho."  Plaintiff depo. I at 133.

4

the letter was sent to the office, I wound up getting locked in the freezer."[9]  Plaintiff depo. I at 132.  The plaintiff could not identify who actually made this comment, but it was a group of three or four men, one of whom was Belser.  *Id*. at 133-134, 139.  She was not sure if Davis was with them.  *Id*. at 134.  No one addressed her directly, but she was the only one walking by them when the comment was made.  *Id.* at 134-135.  She is sure whoever made the comment was speaking to her because she was later locked in the freezer.  *Id.* at 136-137.  Scott also investigated this complaint.  Scott depo. at 35.  The associates named were questioned and denied making this comment.  *Id.*

The plaintiff is sure that Davis locked her in the freezer because the next day, he said he was the one who piled all the things in front of the door.[10]  Plaintiff depo. I at 137.  According to the plaintiff, after an investigation, the store manager concluded that the items were stocked against the freezer door out of ignorance.  *Id.* at 138, 291.  The plaintiff claims that Davis said he placed the pallets in front of the

---

[9]As discussed *infra*, on August 28, 2005, the plaintiff was allegedly locked in the freezer. Plaintiff depo. I at 121.

[10]The freezers in the dairy department do not have locks, thus no one could be "locked" in the freezer.  Scott declaration, ¶ 15.  The doors open by push button and it is not possible to completely block the doors.  *Id*.  One side of the freezer is where dairy items are stocked for customers to select, with glass doors in front of the merchandise, thus anyone who could not exit through the freezer doors could get the attention of someone on the sales floor.  *Id.*  The plaintiff has offered no evidence to demonstrate where the button was in relation to the door or any other means by which to dispute Soctt's declaration that it was not possible to completely block the doors.

freezer door because he had nowhere else to put them.  Plaintiff depo. I at 141-142, plaintiff depo. II at 23.  The freezer actually had two doors, but the other door also had merchandise in front of it.  Plaintiff depo. I at 142-143.  The plaintiff opined that Davis put the pallet where he did out of ignorance and retaliation because Davis knew she was in the freezer.  Plaintiff depo. II at 49.  She further explained that Davis looked and saw her in the freezer and the next thing she knew she was locked in there, but it was also out of ignorance because "he was stupid."  *Id.* at 50-51.  Davis told Scott that one morning when he got to work both ends of the freezer were blocked.  Declaration of Scott, at ¶ 14.

The plaintiff asserts that she was locked in the freezer for two and a half hours, but did tell the managers at Walmart that it may have only been five minutes because they were trying to trick her.[11]  Plaintiff depo. I at 149-150; Declaration of Kevin Scott, ¶ 11.  She never thought to try to move the pallet, but admitted that she lifted pallets many other times.  Plaintiff depo. I at 152-153, plaintiff depo. II at 24.  She got the "demo lady's" attention, asked her to get someone else's attention but it was the wrong person and then "Tim' let her out after his lunch break.  Plaintiff depo. II at 67-

---

[11]In two written statements by plaintiff dated December 29, 2005, and May 3, 2006, the plaintiff estimated that she was in the freezer for one and a half hours.  Defendant exhibits 9 and 10 to plaintiff depo.  On a questionnaire completed for her EEOC charge on May 4, 2006, she estimated she was locked in the freezer for one and a half to two hours.  Defendant exhibit 11 to plaintiff depo.  Later in her deposition, the plaintiff states she was in the freezer an hour and a half.  Plaintiff depo. II at 68.

69. She states that she suffers from pain from being locked in the freezer but refused to have any therapy or counseling. Plaintiff depo. I at 306-307.

Scott investigated this incident by interviewing Davis. Scott depo. at 40. Davis repeatedly stated he had not put the pallets in the door to block plaintiff's way out. *Id.* at 40-41. Scott stated that within five minutes of plaintiff noticing the door was blocked, she was let out by another associate named Tim. *Id.* at 42. Scott further stated that the plaintiff had been stocking the cooler for one to one and half hours at the time the door was blocked. *Id.* He explained that because ninety percent of her job was stocking the cooler, the plaintiff would spend several hours of her shift in the cooler. *Id.* Davis testified that he was not present at work at the time the plaintiff was blocked in. Davis depo. at 116-118.

The last written complaint plaintiff made was September 28, 2005. Plaintiff depo. I at 228; plaintiff exhibit 2 to Scott depo. In it she complained that her department manager, Mike Smiley, yelled at her to stock eggs while she was assisting a customer. Plaintiff exhibit 2 to Scott depo. Scott investigated this complaint. Scott depo. at 37. She further complains that on October 24, 2005, Smiley yelled at her about a trash can being too full, but she did not do it and thought it was stupid that Smiley could not figure out she was not responsible for it. Plaintiff depo. I at 232-

236. She complained to management that Smiley needed to be taught some manners. Plaintiff depo. II at 37.

The plaintiff made numerous written and verbal complaints while she was at Walmart, admitting that "I stayed in the office. All I wanted was respect and to be left alone.... I talked to anybody that was listening." Plaintiff depo. II at 33; defendant exhibits 4-8 to plaintiff depo.

On May 4, 2006, the plaintiff filed a complaint with the EEOC. Plaintiff depo. I at 240-241; defendant exhibits 11 and 12 to plaintiff depo. She asserts she claimed gender discrimination because she is a woman. Plaintiff depo. I at 247. She claims that a customer complained about Davis and Davis was not fired, but she was fired when a customer complained about her and that these two occasions were similar. *Id.* at 248, 250, 253. The plaintiff agreed that the customer who complained about Davis was plaintiff's father and that Davis lied when he stated that "My daddy kicked him." *Id.* at 248-249. Apparently on that occasion, Walmart believed Davis instead of plaintiff's father.[12] *Id.* at 250, 320-321.

The plaintiff was fired for gross misconduct. *See* defendant exhibit 14A to plaintiff depo. She explained the circumstances as follows:

_____

[12]Davis testified he thought this was the plaintiff's boyfriend. Davis depo. at 78. He made a written complaint about the plaintiff's father flashing a little gun at him. *Id.* at 78, 80-85.

> I am working in my department and my head wasn't up.  When my head
> do come up, all I see is somebody's nasty behind in my face.  There was
> his nasty butt.  It wasn't that he had his pants down and they were
> sagging like the young boys do.  He has his pants down where you could
> see his naked behind, not his pants sagging, not his underwear, but his
> naked butt.  I thought that was nasty and disrespectful by my being a
> woman and it shouldn't have been in out department.

Plaintiff depo. at 253-254.  The plaintiff therefore told the customer:

> I told him soft and in a nice tone voice, I didn't get loud, I said you need
> to pull your pants up because that is nasty and it was nasty.  It was nasty
> for me being a female to see something like that, that was nasty in my
> presence.

*Id*. at 254.  The customer told the plaintiff that she could have talked to him nicer, but

she was of the opinion that she was respectful because she said this to him quietly.

 While the customer was still speaking to her, she walked away because she did not

want to hear what else he had to say.  Plaintiff depo. I at 255, 320; defendant exhibits

9 and 14B to plaintiff depo.  She also asserts that in its investigation, Walmart got the

facts wrong because the customer was leaning over a buggy, not bending down to

pick something up.  Plaintiff depo. I at 255-256.  When asked why this mattered, the

plaintiff explained:

> Because they changed my words around and wanted me to sign my
> name to it.  It wasn't that he had no baggy pants on and trying to pick
> nothing up off the floor.  He was an old man that had his pants down
> where you could see his naked behind.  Running his mouth.  He wasn't
> bending over like young boys do.  Then my words were changed.

Plaintiff depo. I at 256.

The plaintiff was informed she was fired by the store manager, Kevin Scott. Plaintiff depo. I at 257-258.  When asked if she believed there was some unlawful reason for her discharge, the plaintiff responded "I think because I put nasty in there." *Id.* at 264.  She then explained she thought this was Walmart's way to get rid of her because of the prior complaints she made.  *Id.* at 265-268.  She also stated that she could have been given a warning instead of being terminated.  *Id.* at 266-267.  The plaintiff further stated that she looked at her termination as "being mistreated as far as me being a woman."  *Id.* at 268.  She further testified that she felt like it was unfair that she was terminated for gross misconduct because:

> I never been explained or never was told no gross misconduct until I was discharged, the day of my discharge.  And I didn't feel like gross misconduct was on my end.  I felt like it was on his end because he is the one with his pants down and I am a female and I felt offended by that.
>
> To me gross misconduct is seeing his behind in my face.  You see nothing but his naked behind.  That's gross misconduct in my opinion.

Plaintiff depo. II at 10.  She is of the opinion that she talked to the customer respectfully.  *Id.* at 42.

Davis has since been fired for hitting the boyfriend of a co-employee in the head while at work.  Davis depo. at 102-103.  Davis explained that he was properly

terminated because the boyfriend was considered a customer and employees get fired for hitting customers or disrespecting customers.  *Id.* at 104-105.  Belser was later fired for using profanity in front of a customer.  Scott depo. at 51-52.

No one at Walmart ever asked the plaintiff questions she considered to be of a personal nature, other than Davis asking her if Belser was her boyfriend.  Plaintiff depo. I at 292-294.  The plaintiff could not give any reason that Walmart should not have hired Davis or Belser.  *Id.* at 294-295.  She agreed that the training Walmart provided should have been sufficient to prevent the things that happened to her.  *Id.* at 297.  She was never inappropriately touched.  *Id.* at 301.  The plaintiff stated that she now suffers from depression and mental anguish because:

> Unwanted advances and from being around them and talking to them.
> That is pressure on your brains.  You know it is like anybody, if you are
> talking to someone stupid, it is going to put some pressure on your
> brains....
> It is going to upset you because  – somebody that is ignorant is going to
> provoke you and disturb your mentality.

Plaintiff depo. I at 310-311.

The plaintiff receives Social Security disability payments for fibromyalgia. Plaintiff depo. II at 6; defendant exhibits 1-3 to plaintiff depo.  She was found eligible for benefits as of December 15, 2006, although she was not terminated from Walmart until December 19, 2006.  Defendant exhibit 3 to plaintiff depo.  She stated she did

not have any pain until after she was locked in the freezer.  Plaintiff depo. II at 8.  She testified that when she was fired in December 2005 she was able to work but then agreed that she was not physically able to work when she was looking for jobs in January 2006.  Plaintiff depo. I at 317.  She further stated that had she not been fired, she would have left Walmart anyway.  *Id.* at 349.  She believes she has been damaged mentally from being locked in the freezer.  *Id.* at 350.  One doctor told her the pain was in her head, but then a specialist told her it was in her blood, but no one has said it was because she was fired.  *Id.* at 355-356.

The plaintiff also filed a workers' compensation claim against Walmart for pain ever since she had been locked in the freezer.  Plaintiff depo. I at 317-318; defendant exhibit 24 to plaintiff depo.  She specifically stated she did not injure her back while locked in the freezer, but she can no longer lift anything heavy.  Plaintiff depo. I at 318, 358-359.  That claim was settled.  Plaintiff depo. I at 339; defendant exhibit 23 to plaintiff depo.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  The non-movant must "demonstrate that there is indeed a material issue of

13

fact that precludes summary judgment." *Clark v.  Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## III.  LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000).  With these standards in mind, the court considers the plaintiff's claims.

**Hostile Environment/Sexual Harassment**[13]

To demonstrate sexual harassment, a plaintiff must show, *inter alia*, that she has been subject to unwelcome sexual harassment and that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment. *Pipkins v. City of Temple Terrace, Florida,* 267 F.3d 1197, 1199 (11th Cir.2001).  The court finds that the plaintiff's allegations fall far, far short of the minimum recognized as harassment by the Eleventh Circuit.  *See e.g., Gupta v. Florida Board of Regents*, 212 F.3d 571, 585 (11th Cir. 2000).  The conduct in question must be severe or

---

[13]Although the plaintiff has dismissed her claims for hostile environment and sexual harassment, she argues that Walmart either did not do enough or did nothing to investigate her complaints of sexual harassment.  Plaintiff's response, at 13-14.  She asserts that she was retaliated against for complaining about the alleged hostile environment and sexual harassment. Thus, the court has considered these two claims solely for the purpose of examining whether the defendant's action in response to these complaints was appropriate.

pervasive enough so that a reasonable person would find it hostile or abusive.  *Clover v. Total System Services, Inc*. 176 F.3d 1346, 1351 (11th Cir.1999).  *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).  The prohibition of harassment on the basis of sex forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1002-03, 140 L.Ed.2d 201 (1998).

Accordingly, a plaintiff must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive.  *See Mendoza v. Borden,* 195 F.3d 1238, 1246 (11th Cir.1999); *Faragher,* 524 U.S. at 788, 118 S.Ct. at 2284.  The court is of the opinion that no reasonable person would find the events about which the plaintiff complained to be hostile or find that the things about what the plaintiff complained were sexual harassment.  A hostile environment, as defined by the United States Supreme Court and the Eleventh Circuit Court of Appeals, simply does not encompass the puritanical world in which the plaintiff seems to dwell.  Other employees flirting with female customers, asking for phone numbers of female customers, and trying to carry on conversations with the plaintiff are not now, never have been, and never will be the makings for a sexual harassment or hostile

environment claim.  Similarly, other employees talking to each other or even dating each other is not prohibited by Walmart's regulations or Title VII.

However, based on *Faragher* and *Ellerth*, the court must also examine whether, once the plaintiff complained, Walmart "exercised reasonable care to ... correct promptly any sexually harassing behavior." *Faragher*, 524 U.S. at 807, 118 S.Ct. at 2293; *Burlington Industries v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 2270 (1998).

> A threshold step in correcting harassment is to determine if any occurred, and that requires an investigation that is reasonable given the circumstances. The requirement of a reasonable investigation does not include a requirement that the employer credit uncorroborated statements the complainant makes if they are disputed by the alleged harasser. Nothing in the *Faragher- Ellerth* defense puts a thumb on either side of the scale in a he-said, she-said situation. The employer is not required to credit the statements on the she-said side absent circumstances indicating that it would be unreasonable not to do so.

*Baldwin v. Blue Cross/Blue Shield of Alabama,*  480 F.3d 1287, 1303 -1304 (11th Cir.2007).  All that is required of an investigation is reasonableness in light of all of the circumstances, and the permissible circumstances may include conducting the inquiry informally.  *Baldwin,* 480 F.3d at 1304, citing *Carr v. Allison Gas Turbine Div., Gen. Motors Corp*., 32 F.3d 1007, 1012 (7th Cir.1994) .

Given the content of the plaintiff's complaints, the court is of the opinion that Scott and other managers took all the action that was required.  Scott testified that he

investigated each complaint of which he was aware.   Because the plaintiff's complaints did not merit any further action, the court cannot fault Walmart for taking no further action.   Thus, while the plaintiff maintains in her response that she was the victim of a hostile environment and sexual harassment, the court finds no action as alleged by the plaintiff rises to the level required to create the same.

**Retaliation**

Even though no sexual harassment or hostile environment was present, the plaintiff certainly complained to management, repeatedly, that this was the case.  She asserts that she was fired in retaliation for these complaints.[14]   Pursuant to Eleventh Circuit law, the plaintiff "'need not prove the underlying claim of discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed."  *Gupta,* 212 F.3d at 586, citing *Meeks v. Computer Assocs. Int'l.,* 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989)).  To establish a prima facie case of retaliation for engaging in protected activity, the court must use the familiar *McDonnell-Douglas* burden shifting standard. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).

---

[14]Although not relevant to the retaliation inquiry, the court does question what injury the plaintiff claims from her termination when she has received disability benefits for a disability which began December 15, 2005, four days prior to her termination.

For retaliation, the plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta,* 212 F.3d at 587, citing *Farley v. Nationwide Mut. Ins*., 197 F.3d 1322, 1336 (11th Cir.1999). *See also Sullivan v. National Railroad Passenger Corp*., 170 F.3d 1056, 1059 (11th Cir.1999); *Holifield v. Reno,* 115 F.3d 1555, 1566 (11th Cir.1997).

Protected activity under Title VII includes complaining to superiors about sexual harassment. *Johnson v. Booker T. Washington Ins.,* 234 F.3d 501, 507 (11th Cir.2000), citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989). The plaintiff's numerous complaints satisfy the first prong of the plaintiff's prima facie case.

The plaintiff suffered an adverse employment action as well, namely her termination.  However, the plaintiff must also establish the requisite causal connection between her statutorily protected conduct and the adverse employment action.  Here, the last complaint Scott received was three months prior to the date of the plaintiff's termination. Walmart maintains that the plaintiff was terminated for gross misconduct.  The plaintiff asserts that, under Walmart's progressive discipline policy, she should have received a warning and been allowed to keep her

employment.  The plaintiff has offered no evidence of what that progressive discipline policy entailed.

The only evidence before the court regarding whether the protected activity and termination were related is the fact that they were approximately three months apart. A close temporal proximity between the protected activity and the adverse action may be sufficient circumstantial evidence of a causal connection. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.2004) (quotation and alterations omitted); *Vennett v. General Elec. Co.,* 2008 WL 834456, 5 (11th Cir.2008).  However, three months between these events is too long to demonstrate a causal connection.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) ("the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' ") (citations omitted); *Davis v. Coca-Cola Bottling Co. Consol.,*  516 F.3d 955, 978 n. 52 (11th Cir.2008)

The Eleventh Circuit has held that "in the absence of any other evidence of causation," a three-month proximity "between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006);  *Wascura v. City of South Miami*, 257 F.3d

1238, 1248 (11th Cir.2001) (holding that, by itself, three and one-half months was insufficient to prove causation).  *See also Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir.2007) ("In the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law")(citations omitted).

As such, the plaintiff has failed in her burden to show a causal connection between her protected activity and the adverse employment action. The court therefore finds that no genuine issue of material fact exists and that the defendants are entitled to judgment in their favor on this claim of the complaint.

**Invasion of Privacy**

For an invasion of privacy claim, a plaintiff in Alabama must show that the defendant's conduct was so outrageous that it caused the plaintiff mental suffering, shame, or humiliation.  *Baldwin v. Blue Cross/Blue Shield of Alabama,*  480 F.3d 1287, 1308-1309 (11th Cir.2007), citing *McIsaac v. WZEW- FM Corp*., 495 So.2d 649, 651 (Ala.1986).  Assuming each event about which the plaintiff complained actually occurred, there was no harassment as that term is legally defined.  As such, the harassment could not be sufficiently outrageous as a matter of Alabama law for to support this claim. In Alabama, the tort of outrage only applies "in the most

egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993). The conduct complained of must be "so outrageous as to be regarded as atrocious and utterly intolerable in a civilized society." *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 755 (11th Cir.1996), citing *American Rd. Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala.1981).

The court finds no allegations by the plaintiff which even come close to the realm of circumstances the tort of outrage was meant to prevent. No one at Walmart ever asked the plaintiff questions she considered to be of a personal nature, other that Davis asking her if Belser was her boyfriend. Plaintiff depo. I at 292-294. Men asking women to smile, or who they are dating, does not rise to the level of egregiousness contemplated by this cause of action. Nothing in the plaintiff's allegations, complaints to Walmart, statement to the EEOC, or her deposition comes anywhere within the arena of conduct "so outrageous as to be regarded as atrocious and utterly intolerable in a civilized society." *Id*.

**False Imprisonment**

The plaintiff asserts that her being "locked" in the freezer satisfies the elements of false imprisonment. "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala.Code § 6-5-170. "Any exercise of force, or the express or implied threat

of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Media General Operations, Inc. v. Stovall,* 2008 WL 687382, 6 (M.D.Ala.2008); *Crown Cent. Petroleum Corp. v. Williams*, 679 So.2d 651, 653 (Ala.1996).

Again, the only evidence the plaintiff has in support of her claim is her own testimony.  The plaintiff argues that

> Davis did not personally, physically restrain the plaintiff, such as grabbing her, holding her, or pulling her back in the freezer. He blocked her exit with pallets, thus the injury to her is emotional. Ms. Watson was systematically harassed, ignored, and eventually falsely imprisoned as a result of both defendants actions....

Plaintiff's response at 20.  By the plaintiff's own admission, she was not physically restrained.  Rather, she was stuck in the cooler in which she worked beyond the time she wished to remain there.   In contrast to the plaintiff's arguments otherwise, the plaintiff's statements about what Davis said are just that, the plaintiff's statements from her deposition.  There is no evidence before the court that Davis actually made those statements.   Davis testified he was not present the day the plaintiff was allegedly locked in the cooler, and the plaintiff has presented no evidence otherwise.[15]

---

[15]For example, the plaintiff could have obtained time sheets to disprove Davis' claim he was not working at the time, but the plaintiff has not done so.  The court has before it only plaintiff's assertion that: (a) Davis knew she was in the freezer, and (b) Davis intentionally

Even more problematic is the lack of restraint of the plaintiff. The plaintiff suffered no more, and no less, than any person who has ever been stuck in an elevator at any place of business. Of course, no one seeks out to be stuck in an elevator, but it happens. That does not make every instance of the same actionable. Rather, the plaintiff must show that someone actually intended to detain her. The complete lack of evidence again reaches out to extinguish this claim. The plaintiff asserts she opened a cooler door and got the attention of the "demo lady" and then "Tim" let her out after he took his lunch break. The plaintiff could have obtained the "demo lady's" testimony, or "Tim's" testimony to support her assertion of the ever expanding time she was in the cooler, but failed to do so. Additionally, while the plaintiff testified that "Tim" let her out of the freezer, there is no evidence before the court as to whether he merely pushed the freezer button from the outside, or whether he moved vast amounts of merchandise, or pulled the plaintiff through a cooler door. The plaintiff also does not address Scott's statement in his declaration that it was impossible to completely block both freezer doors. As such, the plaintiff again presents no more than her own version of events, which is insufficient to create a genuine issue of material fact for trial. The court shall grant the defendants' motion on this claim by separate order.

---

placed a pallet in a manner to prevent plaintiff from leaving the freezer.

**Negligent Hiring, Training, Retention**

When asked in her deposition, the plaintiff could not give any reason that Walmart should not have hired Davis or Belser. *Id.* at 294-295. She agreed that the training Walmart provided should have been sufficient to prevent the things that happened to her. *Id.* at 297. Although the plaintiff maintains that Walmart should be vicariously liable for Davis' actions, plaintiff's response at 21-22, the plaintiff has failed to identify any action by Davis that supports an inference that Walmart negligently hired, trained or retained him. The court shall grant the defendants' motion on this claim by separate order.

## CONCLUSION

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendants' motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 17th day of April, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE